# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER L. SMITH,                     Case No. 1:10-cv-780
      Petitioner,

                                Spiegel, J.
      vs.                                Litkovitz, M.J.

WARDEN, LEBANON                           **REPORT AND**
CORRECTIONAL INSTITUTION,                 **RECOMMENDATION**
      Respondent.

Petitioner, a prisoner in state custody who is currently incarcerated at the Lebanon

Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition and respondent's

return of writ with exhibits, including the transcript of the state trial proceedings. (Docs. 1, 15,

16). In addition, petitioner has filed a motion to stay the instant action (Doc. 25), which

respondent opposes. (*See* Doc. 27).[1]

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On January 9, 2006, the Hamilton County, Ohio, grand jury returned an eleven-count

indictment charging petitioner with two counts of attempted murder in violation of Ohio Rev.

Code § 2923.02(A), with firearm specifications (Counts 1-2); three counts of felonious assault in

violation of Ohio Rev. Code § 2903.11(A), with firearm specifications (Counts 3-5); one count

of having a weapon while under disability in violation of Ohio Rev. Code § 2923.13(A)(2)

(Count 6); one count of carrying a concealed weapon in violation of Ohio Rev. Code §

---

[1]Petitioner has also filed a motion for leave to proceed *in forma pauperis* (Doc. 26), which should be denied
as moot. As the District Court stated in denying petitioner's prior *in forma pauperis* application as moot, petitioner
has already paid the $5.00 filing fee required to commence this action. (*See* Doc. 20).

2923.12(A) (Count 7); two counts of aggravated robbery in violation of Ohio Rev. Code §

2911.01(A)(1), with firearm specifications (Counts 8, 10); and two counts of robbery in violation

of Ohio Rev. Code § 2911.02(A)(2), with firearm specifications (Counts 9, 11). (Doc. 15, Ex. 1).

In its direct appeal decision, the Ohio Court of Appeals, First Appellate District, provided the

following summary of the facts that led to petitioner's indictment:[2]

> Christopher Smith approached John Varvados and demanded that Varvados "hand
> over" anything he had. Smith made movements indicating that he had a gun
> hidden in his clothes. Varvados handed Smith a cellular phone and some money.
> Smith then approached Dennis Taylor in the same manner, making gestures to
> indicate that he had a gun in his clothing. Smith told Taylor to "hand over" his
> property. When Taylor ran into the street and yelled that he was being robbed,
> Smith ran off.
>
> Cincinnati plainclothes homicide detectives driving on West Clifton Avenue
> noticed Smith "acting peculiar" and following a young woman. The detectives,
> concerned for the young woman's safety, exited from their car, approached Smith,
> and identified themselves as police officers. Smith pulled a gun from his
> waistband and fired at the officers, striking one in the knee. Smith's gun then
> jammed. The officers saw Smith attempt to unjam his gun and continue to fire at
> them. Smith fled and was later arrested hiding under a truck with a loaded,
> operable handgun in his possession.

(Doc. 15, Ex. 9, p. 2).

All incidents giving rise to the criminal charges occurred on December 29, 2005,

beginning around 11:30 p.m. (*See* Doc. 16, Plea Hearing Tr. 45). The attempted murder and

felonious assault counts, as well as the attached firearm specifications, stemmed from the

shooting incident involving the two police officers. (*See* Doc. 15, Ex. 1, Counts 1-5). The

---

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

aggravated robbery and robbery charges set forth in Counts 8 and 9 were based on the incident involving the first victim, John Varvados, whereas the charges set forth in Counts 10 and 11 arose from the incident involving the second victim, Dennis Taylor. (*See* Doc. 15, Ex. 1, Counts 8-11).

On October 17, 2006, petitioner entered a plea of no contest to all counts. (Doc. 15, Ex. 2). At a plea hearing held the same date, the trial court advised petitioner of the maximum sentences and maximum aggregate penalty he faced, as well as the rights he was giving up, by entering a no-contest plea. (Doc. 16, Plea Hearing Tr. 7-26). After hearing the prosecutor's "statement of facts" regarding each count, which petitioner was permitted "to admit or deny . . . as the prosecutor read[] them," the trial court accepted petitioner's no-contest plea and found petitioner guilty of all charges. (Doc. 15, Ex. 8; Doc. 16, Plea Hearing Tr. 26-57). At the close of the hearing, the court ordered a pre-sentence investigation [PSI] and scheduled petitioner's sentencing hearing for October 31, 2006. (Doc. 16, Plea Hearing Tr. 57).

The sentencing hearing was held as scheduled on October 31, 2006. (Doc. 16, Sentencing Hearing Tr.). At that hearing, petitioner moved to withdraw his no-contest plea. (Doc. 16, Sentencing Hearing Tr. 2). Defense counsel argued that because "only one shot [was] fired" by petitioner, he "should not have been convicted" of the attempted murder and felonious assault of the police officer who was not shot. (Doc. 16, Sentencing Hearing Tr. 2-3). Defense counsel also contended that petitioner should be permitted to withdraw his plea because he was "not expecting the officers to ask for the maximum sentence in the PSI upon a plea," and because he wanted to defend against the attempted murder and felonious assault charges on the ground that he had acted in self-defense. (Doc. 16, Sentencing Hearing Tr. 3-4). The trial court refused

to allow the withdrawal of petitioner's no-contest plea. (*See* Doc. 16, Sentencing Hearing Tr. 4-9). After next hearing arguments and testimony presented by the defense and prosecution regarding the appropriate sentence to impose, the court sentenced petitioner to terms of imprisonment totaling eighty-five (85) years. (Doc. 15, Ex. 5).[3]

## State Appeal Proceedings

Petitioner timely appealed to the Ohio Court of Appeals, First Appellate District; the appeal was docketed as Case No. C060991. (*See* Doc. 15, Ex. 6). With the assistance of new counsel for appeal purposes, petitioner filed a brief raising the following assignments of error:

> 1. Defendant's plea of no contest was involuntary and should not have been accepted by the trial court.
>
> 2. The trial court erred when it refused to allow appellant to withdraw his plea.
>
> 3. The trial court erred by imposing a sentence against appellant which violated his protection against cruel and unusual punishment.
>
> 4. The trial court erred in imposing sentence contrary to the felony sentencing guidelines which existed at the time of appellant's offense.
>
> 5. The trial court erred when it failed to merge allied offenses of similar import.
>
> 6. Appellant's convictions are void where the trial court was without jurisdiction to accept his pleas of no contest.
>
> 7. Appellant's trial counsel was ineffective.

(Doc. 15, Ex. 7).

---

[3] Specifically, petitioner was sentenced to the following consecutive terms of imprisonment: seven (7) years for the attempted murder offense charged in Count 1, as well as an additional 7-year prison term on an attached merged firearm specification; ten (10) years for the attempted murder offense charged in Count 2; eight (8) years for each felonious assault offense, as charged in Counts 3 through 5; eight (8) years for each aggravated robbery offense, as charged in Counts 8 and 10, as well as additional 3-year prison terms on the merged firearm specifications attached to each of those counts; five (5) years for each robbery offense, as charged in Counts 9 and 11; and concurrent prison terms totaling five (5) years for the weapons offenses charged in Counts 6 and 7.

On May 30, 2008, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling all assignments of error, except the assignment of error challenging the trial court's failure to merge certain counts for sentencing purposes as allied offenses of similar import. (*See* Doc. 15, Ex. 9). The state appellate court sustained in part and overruled in part that assignment of error, after concluding that the following counts should have been merged for sentencing purposes: (1) the felonious assault charges in Counts 3 and 4, which pertained to "the same victim and the same conduct;" (2) the aggravated robbery and robbery charges in Counts 8 and 9 stemming from one act against the victim Varvados; and (3) the aggravated robbery and robbery charges in Counts 10 and 11 stemming from one act against the victim Taylor. (Doc. 15, Ex. 9, pp. 8-11). The court affirmed the trial court's judgment as to Counts 1, 2, 5, 6 and 7, and the trial court's findings of guilt on the remaining charges. (Doc. 15, Ex. 9, p. 13). The court further held:

> The sentences imposed for felonious assault in counts three and four, the sentences imposed for aggravated robbery and robbery in counts eight and nine, and the sentences imposed for aggravated robbery and robbery in counts ten and eleven are vacated, and this case is remanded for resentencing so that only one felonious-assault sentence is imposed for counts three and four, and so that one aggravated-robbery or robbery sentence for each victim is imposed for counts eight and nine and counts ten and eleven. The case is also remanded for correction of the trial court's entries to reflect a charge of, a plea of no contest to, and a guilty finding for aggravated robbery in count ten.

(Doc. 15, Ex. 9, p. 13).

Petitioner filed a timely *pro se* appeal to the Ohio Supreme Court, raising the following propositions of law in his memorandum in support of jurisdiction:

> 1. Where a plea of no contest is not entered intelligently and involuntarily, Defendant's constitutional rights are violated.

2. Where a trial court violates due process and refuses to allow a defendant to withdraw his no contest plea before sentencing, the trial court abuses its discretion and violates the defendant['s] constitutional rights.

3. Where a trial court imposes effectively a life sentence for an offense that does not involve a loss of life, a defendant's protection against cruel and unusual punishment is violated.

4. A sentence to a term of incarceration that exceeds the maximum penalty available under the statutory framework at the time of the offense, violates due process and the Ex Post Facto Clause of the Federal Constitution.

5. Where a plea of no-contest is predicated on ineffective assistance of counsel, the plea is voidable as a violation of the Sixth Amendment.

(Doc. 15, Exs. 10-11). The State cross-appealed to challenge the Ohio Court of Appeals' decision remanding the matter for resentencing so that certain counts could be merged as "allied offenses of similar import." (Doc. 15, Ex. 12).

On December 19, 2008, the Ohio Supreme Court denied petitioner leave to appeal, declined jurisdiction to hear the cross-appeal, and summarily dismissed the appeal and the cross-appeal "as not involving any substantial constitutional question." (Doc. 15, Ex. 14).[4]

**State Post-Conviction Proceedings**

On June 29, 2007, while simultaneously pursuing relief on direct appeal to the Ohio Court of Appeals, petitioner's appellate counsel filed a timely petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 with the Hamilton County Common Pleas Court. (Doc. 15, Ex. 25). In the petition filed by counsel, petitioner claimed that his retained trial attorney, Kenneth Lawson, provided ineffective assistance. Specifically, petitioner asserted that prior to

---

[4]It is noted that petitioner was resentenced in accordance with the Ohio Court of Appeals' direct appeal decision and remand order. After a hearing held on December 28, 2009, the trial court issued a Judgment Entry on December 31, 2009 resentencing petitioner to terms of imprisonment totaling sixty-four (64) years. (Doc. 15, Ex. 24). Apparently, petitioner did not pursue an appeal in the state courts from that entry. (*See* Doc. 15, Brief, p. 8). Moreover, petitioner does not challenge the resentencing decision in the instant federal habeas corpus action.

trial, Lawson "never met Petitioner; never accepted calls from petitioner or his family; never discussed the indictment with petitioner; never discussed the facts and/or possible defenses with petitioner; never discussed identity of witnesses with petitioner; never reviewed discovery materials with petitioner; [and] never prepared for . . . trial." (Doc. 15, Ex. 25, p. 3). Petitioner also contended that on the scheduled trial date, Lawson made "false representations" about a plea bargain he had negotiated with the State. Petitioner averred that he was told by Lawson that he would be required to serve a 10-year sentence under the terms of the proposed plea bargain; when petitioner expressed reluctance about accepting the proposal, Lawson induced him to agree to the plea by stating that petitioner's "grandmother and great-aunt supported the 10 year plea bargain." (Doc. 15, Ex. 25, p. 3). On August 2, 2007, the trial court denied the petition for post-conviction relief. (Doc. 15, Ex. 27).

Petitioner's appellate counsel filed a timely appeal on petitioner's behalf to the Ohio Court of Appeals, First Appellate District, claiming as the sole assignment of error that "[t]he trial court erred when it denied [the] petition for post-conviction relief without a hearing." (Doc. 15, Exs. 28-29). On August 1, 2008, the Ohio Court of Appeals sustained the assignment of error, holding that "the common pleas court erred when it denied [the post-conviction] petition without an evidentiary hearing." (Doc. 15, Ex. 31, p. 9).

The matter was remanded to the trial court for evidentiary hearing. (Doc. 15, Ex. 31, p. 9). Petitioner and his grandmother testified at a hearing held on November 19, 2008, and stipulations agreed to by both parties were later read into the record regarding Lawson's version of events, which Lawson had relayed at a meeting with the prosecuting attorney and the attorney representing petitioner in the post-conviction matter. (*See* Doc. 16, Post-Conviction Proceedings

Tr. Vol. I-II).

After hearing counsels' arguments on February 26, 2009, the trial court issued an Entry on March 2, 2009 overruling the post-conviction petition. (Doc. 15, Ex. 32; Doc. 16, Post-Conviction Proceedings Tr. Vol. III). The court concluded that petitioner had "failed to prove any of the allegations made by him in support of his Petition For Post Conviction Relief by clear and convincing evidence as required by law;" the court reached that conclusion after making the following pertinent factual findings:

> 3. In support of his Petition for Post Conviction Relief, Defendant alleges that Mr. Lawson was derelict in his duties as Defendant's attorney. In the pro-se "Notice of Appeal" filed by Defendant November 16, 2006, which was specifically referenced by the Court of Appeals in its Decision remanding the matter to this Court, Defendant specifically claimed that ". . . Kenneth Lawson never filed my Motion of Discovery . . . ." The transcript of the record of the proceedings, however[,] indicates that this assertion is false as Mr. Lawson, in fact, filed a Demand for Discovery, a Request for a Bill of Particulars and a Demand for Disclosure of Favorable Evidence on January 27, 2006 on Defendant's behalf.

> 4. In support of his Petition for Post Conviction [R]elief, Defendant also claims that Mr. Lawson was derelict in his duties and alleges that Mr. Lawson did not come to see him prior to the date that he entered his plea (i.e. 10-17-06). In the pro-se "Notice of Appeal" filed by Defendant on November 16, 2006, which was specifically referenced by the Court of Appeals in its Decision remanding the matter to this Court, Defendant alleged that ". . . I (Defendant) never seen (sic) Kenneth Lawson until 10-17-06.["]

> Mr. Lawson, however, has represented to this Court that Defendant's allegation is untrue. Although Mr. Lawson couldn't remember specific dates and times when he met with Defendant, he did specifically remember having several prior personal contacts with Defendant wherein they reviewed Defendant's case.

> This Court specifically notes that Mr. Lawson personally made at least 7 separate appearances before the trial court during the pendency of this case. Moreover, it finds that Defendant's claim that Mr. Lawson did not meet and/or confer with him is not supported by the record.

While Defendant maintains that Mr. Lawson did not confer with him prior to October 17, 2006 in the pro-se "Notice of Appeal" filed by Defendant on November 16, 2006, which was specifically referenced by the Court of Appeals in its Decision remanding the matter to this Court, neither Defendant [n]or any member of his family advised the Court at any time prior to entering into his plea that they had any concerns with Mr. Lawson and/or that he had not properly consulted with Defendant prior to tendering his plea. In fact, during his plea, Defendant acknowledged and advised the Court that he ". . . was satisfied with his attorney's advice, competence and counsel . . . ."

This Court therefore specifically finds that Defendant's allegation that Mr. Lawson did not meet and confer with him prior to October 17, 2006 is not corroborated by the evidence and the record [and] has therefore not been proven by Defendant.

5. In support of his Petition for Post Conviction Relief, Defendant additionally alleges that Mr. Lawson "misled" him into entering the plea, claiming that Mr. Lawson represented to Defendant that he (Defendant) would get a sentence of only ten years of incarceration if he entered a plea. Although in his Petition Defendant claims that he really wanted a trial, he conceded in testimony that he was still willing to do ". . . 10 years . . ." if it were offered to him.

Defendant maintains that his willingness to enter into the "no contest" plea was specifically predicated upon his belief that he was going to receive a 10 year sentence. Defendant alleges that Mr. Lawson advised him (Defendant) that he (Lawson) had spoken to his grandmother about the 10 year deal and that she had advised Lawson to tell Defendant to accept it. Defendant contends that these factors induced him into making his plea.

Mr. Lawson, however, has represented to this Court that he never advised or represented to Defendant or any member of his family that if Defendant entered a "no contest" plea that he would receive a 10 year sentence. In fact, Mr. Lawson never communicated to Defendant or any member of his family that Defendant would receive any specific sentence for his plea.

A review of the transcript from Defendant's plea (i.e. 10-17-06) indicates that the court specifically advised Defendant that the *minimum* sentence that he could get upon his plea was *13 years*. The court also specifically advised Defendant that the maximum sentence was 105 1/2 years, and Defendant specifically advised the court (during his plea) that he understood those terms. Defendant represented to the court that no promises or other representations had been made to him in order to induce his plea. The court never discussed the 10 year sentence that Defendant claims Mr. Lawson advised him he would receive. Defendant also never advised

the court that it was his understanding that he would only be receiving 10 years in exchange for his plea.

There is no evidence in the record that there was an agreed sentence (of 10 years) offered to Defendant, and nothing on the plea form suggests that the sentence would be for 10 years. As noted above, the court specifically advised Defendant that the minimum sentence that he could receive was *13 years*. Defendant acknowledged his understanding of the range of prison terms to the court.

Further, Defendant did not first advise Mr. Lawson of his desire to set aside the plea until the date of sentence after Mr. Lawson had read the PSI and learned that the police wanted a ". . . maximum sentence . . . ." Mr. Lawson immediately raised this issue with the court and the matter of Defendant's concerns about the request for a maximum sentence by the police was addressed with Defendant by the court. During this exchange, Defendant never mentioned his purported belief that he was only to receive a 10 year sentence.

This Court therefore specifically finds that Defendant's allegation that he was led to believe that he would be receiving a 10 year sentence in exchange for his plea is not corroborated by the evidence and record and therefore the claim has not been proven.

6. In support of his Petition for Post Conviction Relief, Defendant also makes an innuendo that Mr. Lawson was intoxicated and/or otherwise impaired while representing him in this matter and was therefore "ineffective." In making his innuendo, Defendant has suggested that Mr. Lawson's impairment was open and obvious. He has alleged that Mr. Lawson ". . . appeared disheveled . . . he had a bad odor . . . he appeared to be sleepy . . . His eyes were red and his lips were white and dry. . .". Defendant's grandmother further alleged that when she spoke to Mr. Lawson on the date of the plea, she noticed ". . . unusual movement in his hands and arms . . .". Defendant therefore suggests that this compromised Lawson's ability to represent Defendant in the proceedings.

Mr. Lawson candidly admitted to this Court that he developed a drug problem in approximately 2000-2001. This problem included hi[s] taking prescription drugs and illegal drugs. Mr. Lawson admitted that he was abusing drugs up until February of 2007 (after Defendant's plea). Mr. Lawson has represented to this Court, however, that his abuse of drugs did not necessarily affect his ability to function. In fact, when Mr. Lawson used drugs in the morning hours, the use of the drugs "permitted" him to function in court. Mr. Lawson adamantly denied that he ". . . shook when he took drugs . . ." and that Defendant's allegation that (on the date of the plea) Defendant's lips ". . . appeared white and dry . . ." was specifically not true.

10

With respect to this allegation and notwithstanding Mr. Lawson's candor about his drug problem, there was no statement from Defendant and/or his grandmother at the time of the plea to suggest that they were concerned that Mr. Lawson was, in any way, impaired, compromised and/or otherwise ineffective in his representation of Defendant. In fact, during the Criminal Rule 11 colloquy, Defendant specifically represented to the court in the record that he ". . . was satisfied with his attorney's advice, competence and counsel . . . ." Moreover, in the pro-se "Notice of Appeal" filed by Defendant on November 16, 2006, which was specifically referenced by the Court of Appeals in its Decision, Defendant complained about Mr. Lawson ". . . not coming to see him . . ." and about being "misled" by Mr. Lawson about the ". . . 10 year deal . . . ." Defendant made no reference and/or expressed no concerns about Mr. Lawson being impaired and/or compromised in any way. It is important to note that Lawson's drug problems were not made public until April of 2007 and that Defendant's and his grandmother's respective statements regarding his alleged "impairment" were not first made until the end of April (i.e. Defendant's affidavit) and the end of May (i.e. grandmother's affidavit).

The Court also notes that there is no independent evidence in the record to establish that Mr. Lawson was obviously impaired on the date of the plea. The court engaged Mr. Lawson and included him in the plea colloquy prior to accepting Defendant's plea. There is nothing to corroborate Defendant's allegations concerning Mr. Lawson's appearance and/or odors, etc. that were observed and/or noticed by any other person and/or that Mr. Lawson's condition was in any way impaired.

This Court further notes that there was no other evidence to establish that Mr. Lawson was intoxicated and/or impaired on any other occasion during his representation of Defendant. In fact, since Defendant testified that he never saw Mr. Lawson throughout the proceeding and that he first saw him on the date of the plea (10-17-06), he cannot suggest that Lawson was impaired on other dates and times while representing him. Likewise, Defendant's grandmother testified that she saw Mr. Lawson on three occasions (between the date that he was retained and the date of the plea), and she did not testify that she had concerns about impairment on any other date.

This Court therefore specifically finds that Defendant's allegation that Mr. Lawson was impaired in some manner and that this impairment affected Lawson's abilities to effectively represent Defendant in this matter is not corroborated by the evidence and has not been proven by him.

7. In support of his Petition for Post Conviction Relief, Defendant also alleges that Mr. Lawson "misled" him into entering his plea because he claims that

Lawson represented to Defendant that Defendant would be permitted to argue a claim of "self defense" as part of his "no contest" plea and that such a claim would likely result in a dismissal of some of the charges against him. Although Defendant also admitted to the truth of the charges against him during the plea colloquy and testified before this Court that he was still ". . . willing to do 10 years . . .", he also maintained that he wanted a ". . . jury trial . . ." so that he could argue his "self defense" claim.

Mr. Lawson represented to this Court that he had communicated to his client that it was his opinion that the affirmative defense of "self defense" would not be available to Defendant during a trial. This was because Defendant would not be able to establish that he (Defendant) was not "at fault" for the circumstances giving rise to the use of deadly force (i.e. Defendant had committed 2 separate robberies prior to shooting at the officers. The person whom he shot and the person who[m] he shot at were police officers attempting to arrest him for those offenses). Defendant also has a legal disability and was not entitled to have a firearm on the date he committed the offenses.

Mr. Lawson explained to Defendant that while his "self defense" claim could not be used at trial, it could be used as a mitigating factor that might have some positive impact on his sentence.

This Court finds that Defendant's claim that he was advised by Mr. Lawson that he could raise "self defense" during his plea to get some of the charges dismissed is not supported by the evidence. In his testimony to this Court, Defendant admitted that he shot the gun (i.e. he testified that he ". . . discharged a gun in the city limits . . .").

This Court finds that as a matter of law, Defendant would not have been entitled to rely on a self defense claim and would not have been permitted to get an instruction on self defense at trial as Defendant used a firearm to commit the crimes of Aggravated Robbery, [and] Defendant was not legally entitled to possess or use a firearm on the date of the crimes.

Moreover, Defendant was given the specific opportunity by [the trial judge] to address his claimed desire for a jury trial and his right to raise defenses against the charges. During the Criminal Rule 11 plea colloquy, the court specifically advised Defendant of his right to a jury trial and further inquired as to whether Defendant was knowingly, intelligently and voluntarily waiv[ing] his right to a jury trial by entering into the plea. Defendant also specifically acknowledged that he was waiving his right to confront witnesses and challenge the evidence against him.

There is nothing in the record to demonstrate that Defendant was misled and/or otherwise tricked into giving up his right to a jury trial.

8. This Court also finds that prior to accepting his plea of "no contest" and finding Defendant guilty, the trial court fully complied with Criminal Rule 11, specifically advising Defendant of all the information required by law. This Court further finds that the record indicates that Defendant was made fully aware of his rights, the nature and extent of the charges against him and the effect of his plea of no contest, and that he made a knowing, intelligent and voluntary waiver of his rights and that he knowingly, voluntarily and intelligently tendered his "no contest" plea to the court.

(Doc. 15, Ex. 32, pp. 3-11) (emphasis in original; footnote omitted).

Petitioner next filed a timely *pro se* appeal to the Ohio Court of Appeals, First Appellate District; the appeal was docketed as Case No. C090215. (Doc. 15, Exs. 33-34). On June 23, 2009, the state appellate court entered an order striking petitioner's appellate brief because petitioner had attached the wrong final order to the brief in violation of Local Rule 6(B)(1)(b).[5] (Doc. 15, Ex. 35). The court granted petitioner an extension to July 13, 2009 to correct the error by filing an amended brief. (Doc. 15, Ex. 35). On July 13, 2009, petitioner filed another appellate brief. (Doc. 15, Ex. 36). However, on the same date, the Ohio Court of Appeals struck that brief for failure to comply with Local Rule 6(B)(1)(b), apparently because petitioner failed to attach any final order to the brief; petitioner was granted a second extension to July 31, 2009 to file an amended brief in accordance with the local rule. (Doc. 15, Ex. 37).

It appears from the online docket records maintained by the Hamilton County Clerk of Court that petitioner failed to file an amended brief in accordance with the Ohio Court of

---

[5] The rule provides that "the appellant's brief shall have appended to it copies of the final order(s) from which the appeal is taken, and, if available, the trial court's opinion or decision or finding of fact and conclusion of law." (*See* Doc. 15, Ex. 35).

Appeals' July 13, 2009 order.[6]  On September 29, 2009, the Ohio Court of Appeals *sua sponte*

dismissed the appeal "for failure of the appellant to comply with the Ohio Rules of Appellate

Procedure to wit:  the appellant's brief was not timely filed" in accordance with Ohio R. App. P.

18(C).  (Doc. 15, Ex. 38).   The online docket report for Case No. C090215 reflects that

petitioner attempted to reinstate the appeal by way of various motions filed on November 12,

2009 and April 5 and 29, 2011.  On April 28 and June 2, 2011, the Ohio Court of Appeals filed

Entries overruling petitioner's requests for relief from judgment and to reopen the appeal; in both

entries, the court emphasized that the "appeal was dismissed for lack of an appellant's brief on

September 29, 2009, and the appellant represented himself in this proceeding."

As respondent has pointed out in the return of writ (Doc. 15, Brief, p. 10), petitioner did

not pursue an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' initial

September 29, 2009 entry *sua sponte* dismissing the appeal.  Apparently, petitioner did attempt to

file a *pro se* notice of appeal and memorandum in support of jurisdiction from the Ohio Court of

Appeals' final June 2, 2011 entry overruling petitioner's subsequent requests for relief from

judgment and to reopen the appeal.  (*See* Doc. 25, Appendix).  The pleadings submitted for filing

in connection with "Court of Appeals Case No. C-099215" [sic] were stamped as "received" by

the state supreme court's Clerk of Court on July 13, 2011.  (*See* Doc. 25, Appendix).[7]  However,

---

[6]*See* http://www.courtclerk.org/case_summary.asp?sec=doc&casenumber=C0900215.

[7]In the memorandum in support of jurisdiction, petitioner claimed that (1) his appellate counsel was ineffective for failing to file "an appella[te] and/or Ander's brief;" and (2) the Ohio Court of Appeals erred when it overruled his application to reopen the appeal.  (Doc. 25, Appendix).  At first blush, the claims do not appear to pertain to any issues raised in the state post-conviction proceeding, but rather to petitioner's separate application for reopening of the direct appeal.  However, on closer review of the pleadings and record, it appears that, as alleged, petitioner was appealing the Ohio Court of Appeals' June 2, 2011 entry denying his request to reopen the appeal in the post-conviction matter based on the contention that his appellate counsel, who also initially served as his counsel in the post-conviction matter, or the attorney appointed to represent him in the separate reopening proceeding should have filed an amended brief on his behalf to avoid dismissal of the post-conviction appeal.

petitioner's submissions apparently were returned to petitioner by the Clerk of Court as inadequate to perfect an appeal to the Ohio Supreme Court, given that no such appeal was filed. The undersigned has reviewed the Hamilton County Clerk of Court's online docketing records pertaining to petitioner's direct and post-conviction appeals–Case Nos. C060991 and C090215. (*See also* Doc. 27, Ex. A). The undersigned has also conducted a "search by party name" on the Ohio Supreme Court's online docketing website.[8] The search has revealed that the only appeal actually filed by petitioner with the Ohio Supreme Court in this matter was his discretionary appeal from the Ohio Court of Appeals' initial May 30, 2008 direct appeal decision.

### Application To Reopen Appeal

On August 8, 2008, while his appeal from the Ohio Court of Appeals' direct appeal decision was pending before the Ohio Supreme Court, petitioner filed a *pro se* application to reopen the direct appeal with the Ohio Court of Appeals, First Appellate District, in Case No. C060991. (Doc. 15, Ex. 15). In the application filed pursuant to Ohio R. App. P. 26(B), petitioner contended that his appellate counsel was ineffective for failing to raise the following claims as additional assignments of error on direct appeal:

> 1. The trial court erred when it established jurisdiction over an insufficient indictment, violating appellant's constitutional right to due process and a grand jury indictment, thereby rendering his no contest plea void.
>
> 2. The trial court erred when it established jurisdiction to pronounce a conviction to sentencing enhancement elements that were not contained in the indictment, violating appellant's right to due process and a grand jury indictment, thereby rendering his sentence void.

---

[8]The results from the "search by party name" can be found on the following website link: http://www.sconet.state.oh.us/Clerk/ecms/resultsbypartyname.asp?Lname=smith&Fname=christopher&myPage=searchbypartyname%2Easp.

3. The trial court erred in establishing jurisdiction to impose consecutive firearm specification[s], violating appellant's right to due process and grand jury indictment.

4. The trial court erred by establishing jurisdiction to impose consecutive term[s] of incarceration absent statutory authority, violating appellant's right to due process and equal protection of the law.

(Doc. 15, Ex. 15).

On February 2, 2009, the Ohio Court of Appeals issued a decision finding that petitioner's appellate counsel was not ineffective to the extent he failed to assign as error (1) "the trial court's imposition of maximum and consecutive sentences;" and (2) "the trial court's imposition of consecutive sentences on the firearm specifications." (Doc. 15, Ex. 17, p. 2). However, the court granted petitioner's application for reopening and appointed counsel to represent petitioner in the reopened appeal to the extent petitioner claimed that his appellate counsel was ineffective "in failing to submit an assignment of error challenging his robbery convictions under the Ohio Supreme Court's decision in *State v. Colon*[, 885 N.E.2d 917 (Ohio 2008),] ("*Colon I*"), when his indictment had omitted the mens rea element in the robbery counts." (Doc. 15, Ex. 17, pp. 2-3).

In the reopened appeal, petitioner claimed as the sole assignment of error that the trial court's judgment "was Contrary to Law in that [the court] accepted a plea when the indictment was defective." (Doc. 15, Ex. 18). The State filed a brief responding to the assignment of error, and the parties filed additional supplemental briefs supporting their positions on issues raised in the reopened appeal. (*See* Doc. 15, Exs. 19-22).

On November 10, 2009, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's assignment of error "solely because the issue it raises is not ripe for review." (Doc.

15, Ex. 23, p. 3).  In so ruling, the court pointed out that in its May 30, 2008 direct appeal decision, it had vacated petitioner's robbery sentences and had remanded the matter for resentencing to correct the trial court's error in failing to merge the aggravated-robbery and robbery charges set forth in Counts 8 and 10 and in Counts 9 and 11 as "allied offenses of similar import."  (Doc. 15, Ex. 23, pp. 1-2).  The court also found that "[t]he record does not demonstrate that Smith has been resentenced."[9]  (Doc. 15, Ex. 23, p. 2).  The court concluded that because petitioner had yet to be resentenced, no appealable "final judgment of conviction" had been entered.  (Doc. 15, Ex. 23, pp. 2-3).  The court continued: "Without a valid sentence, there can be no final judgment of conviction.  Therefore, Smith's argument that his robbery convictions must be set aside is premature and we do not address it."  (Doc. 15, Ex. 23, p. 3).

The Hamilton County Clerk of Court's online docket record for Case No. C060991 reveals that, as respondent has stated in the return of writ (*see* Doc. 15, Brief, p. 8), petitioner did not pursue an appeal to the Ohio Supreme Court from decisions rendered in the reopening proceeding.

### Federal Habeas Corpus

Petitioner submitted his habeas corpus petition to the prison mail room for filing with the Court on or about October 26, 2010, and the action officially commenced on November 8, 2010. (*See* Doc. 1, p. 16).  In the petition, petitioner asserts four grounds for relief:

> **Ground One:**  Defendant maintains his trial attorney offered ten year sentence "off the record[.]"  Trial counsel denied any such offer or communication with the defendant or his family and because the offer cannot be corroborated by the record.

---

[9]As noted earlier, *see supra* p. 6 n.4, petitioner was subsequently resentenced on December 31, 2009 to an aggregate prison term of sixty-four (64) years.  (*See* Doc. 15, Ex. 24).

**Ground Two:** To further support the claim raised in ground one, the petitioner can not meet the burden of proof of trial counsel's err[or] where the specific error or evidence is outside the record, and trial counsel did not admit the error.

**Ground Three:** As argued in ground two, the Court of Appeals[,] First Appellate District[,] did in-part reverse and remand the case which clearly indicated some substantial error by trial counsel. . . .

**Ground Four:** As argued in ground[] three, but for the error(s) by trial counsel outside the record[,] a different out come would have resulted. The manifest weigh[t] of evidence dehors the record to constitute a silent technicality outside the record. Counsel's deficient performance vs. defendant's defense.

(Doc. 1, pp. 5, 6, 8, 9). Petitioner avers that the issues presented in his grounds for relief were raised or otherwise arose in the state post-conviction proceedings. (Doc. 1, pp. 5, 7, 8, 10).

Respondent has filed a return of writ responding to petitioner's allegations. (Doc. 15). Respondent contends that petitioner has waived his claims for relief as a result of his procedural defaults in the state courts. (Doc. 15, Brief, pp. 14-19). Alternatively, respondent argues that petitioner's claims for relief are not cognizable in this federal habeas proceeding and, in any event, lack merit. (Doc. 15, Brief, pp. 11-14, 19-24).

After the return of writ was filed, petitioner filed a motion to stay the instant action while he exhausts a state court remedy. (Doc. 25). Respondent has filed a brief opposing the motion for stay. (Doc. 27).

## II. PETITIONER'S MOTION FOR STAY (DOC. 25) SHOULD BE DENIED

Petitioner has requested a stay of the instant action so that he can exhaust an issue, which he claims is "currently . . . pending in the state courts." (Doc. 25). In support of his motion for stay, petitioner has attached copies of a *pro se* notice of appeal and memorandum in support of jurisdiction that were "received" by the Ohio Supreme Court's Clerk of Court on July 13, 2011.

(Doc. 25, Appendix). As discussed above, the pleadings were submitted by petitioner in an attempt to perfect an appeal to the state's highest court from the Ohio Court of Appeals' June 2, 2011 entry in Case No. C090215 denying his motions for relief from judgment and to reopen his state post-conviction appeal, which had been dismissed nearly two years earlier on September 29, 2009. (*See* Doc. 15, Ex. 38; Doc. 27, Ex. A).

Respondent opposes petitioner's motion because review of the Ohio Supreme Court's docket reveals that no appeal from the June 2, 2011 appellate court order was ever filed with the state's highest court. (Doc. 27). Respondent contends that no remedy is available in the state courts at this late juncture for petitioner to seek further appellate review of claims raised in his state post-conviction petition or to challenge the dismissal of his post-conviction appeal in September 2009. In so arguing, respondent points out that the remedy of a delayed appeal to the Ohio Supreme Court "does not apply to appeals involving postconviction-relief or appeals brought pursuant to App. R. 26(B)." S.Ct. Prac. R. 2.2(A)(4)(c). Indeed, the Clerk of Court is expressly directed to "refuse to file motions for delayed appeal involving postconviction-relief or App. R. 26(B)." *Id.*

As respondent has argued, and contrary to petitioner's contention, the Ohio Court of Appeals' and Ohio Supreme Court's docket records reflect that petitioner has no appeal pending in the Ohio Supreme Court. Furthermore, no remedy is available in the state courts to pursue at this late juncture. Petitioner has already exhausted the direct appeal remedy, as well as the remedy of state post-conviction relief and an application under Ohio R . App. P. 26(B) to reopen the direct appeal. Moreover, because a delayed appeal to the Ohio Supreme Court is precluded in post-conviction proceedings, appellate review of the dismissal on September 29, 2009 of

19

petitioner's post-conviction appeal cannot be obtained.

Because the pleadings "received" by the state supreme court's Clerk of Court on July 13, 2011 were never filed, they apparently were rejected by the Clerk of Court as inadequate to perfect an appeal and returned to petitioner.  In those pleadings, petitioner sought relief from the initial September 29, 2009 dismissal order and reinstatement of his post-conviction appeal based on the argument that his counsel on direct appeal, who also initially served as counsel in the post-conviction proceedings, or the attorney appointed to represent him in the Rule 26(B) reopening matter was ineffective in failing file an amended brief by the July 31, 2009 deadline date in the post-conviction appeal.  (*See* Doc. 25, Appendix).  Petitioner is foreclosed from presenting such a claim to the state courts at this juncture because there is no provision for second or successive applications for reopening under Ohio R. App. P. 26(B) for the purpose of challenging the effectiveness of appellate counsel.  *See, e.g., State v. Williams,* 790 N.E.2d 299, 300-01 (Ohio 2003) (per curiam); *State v. Richardson,* 658 N.E.2d 273 (Ohio 1996) (per curiam); *State v. Cheren,* 652 N.E.2d 707, 708 (Ohio 1995) (per curiam) (citing *State v. Peeples,* 652 N.E.2d 717 (Ohio 1995), decided the same date, in holding that "a prisoner has no right to file successive applications for reopening," and that "[o]nce ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its relitigation"); *cf. Reid v. Moore,* No. 3:05cv326, 2008 WL 596781, at *1, *12 (S.D. Ohio Mar. 5, 2008) (Rose, J.; Merz, M.J.).  In any event, as the Ohio Court of Appeals emphasized in its final June 2, 2011 entry, petitioner represented himself in that appeal.  Therefore, neither petitioner's appellate counsel nor the attorney who represented petitioner in the Rule 26(B) proceeding were under any duty to file an amended brief on petitioner's behalf in the *pro se* post-conviction appeal.

Accordingly, in sum, the Court concludes that because petitioner has no appeal pending in the Ohio Supreme Court, and because no remedy remains available in the state courts for petitioner to pursue relief, his motion to stay the instant action for exhaustion purposes (Doc. 25) should be **DENIED**.

### III.  THE HABEAS PETITION SHOULD BE DENIED BECAUSE PETITIONER PROCEDURALLY DEFAULTED AND HAS WAIVED HIS CLAIMS FOR RELIEF

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th  Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may

be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[10]  In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009).  To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will

---

[10]In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris . . .* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as petitioner has averred in his federal habeas petition, petitioner raises claims challenging his trial counsel's effectiveness based on evidence outside the record, which were presented or otherwise arose in the state post-conviction proceedings. (*See* Doc. 1, pp. 5, 7, 8, 10 ). However, petitioner procedurally defaulted any claims from the state post-conviction proceedings by (1) failing to file an amended brief in accordance with the Ohio Court of Appeals' rules and express orders; and (2) then failing to timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' September 29, 2009 entry *sua sponte* dismissing the post-conviction appeal due to petitioner's failure to comply with the appellate court's rules of procedure. (*See* Doc. 15, Exs. 35-38; Doc. 27, Ex. A). Although petitioner did attempt to file an appeal with the Ohio Supreme Court in order to challenge a later appellate court entry filed June 2, 2011 denying motions for relief from judgment and to reopen the post-conviction appeal, the Ohio Supreme Court apparently refused to allow that appeal.

Petitioner failed to comply with well-established state procedural rules and the Ohio Court of Appeals' express order setting a deadline of July 31, 2009 for filing an amended brief, which were relied on by the Ohio Court of Appeals in its initial order *sua sponte* dismissing the appeal and in its subsequent entries denying petitioner's requests for relief from judgment and to

reinstate the post-conviction appeal. Moreover, it appears that the Ohio Supreme Court similarly relied on an adequate and independent state ground in refusing to file petitioner's notice of appeal and memorandum in support of jurisdiction from the Ohio Court of Appeals' final June 2, 2011 entry denying petitioner's belated motions seeking review of his post-conviction claims. Therefore, this Court's review of petitioner's grounds for relief is barred unless petitioner can demonstrate cause for and actual prejudice from his procedural defaults or demonstrate that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485 (1986).

Petitioner has not argued, nor does the record demonstrate, that failure to consider any of the defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

In addition, petitioner has not provided an adequate explanation for (1) his failure to file an amended brief by July 31, 2009 in accordance with the Court of Appeals' express order of July 13, 2009 (*see* Doc. 15, Ex. 37); or (2) his failure to file a timely appeal to the Ohio Supreme Court's from the Court of Appeals' September 29, 2009 final judgment dismissing the post-conviction appeal. Petitioner, who represented himself in the post-conviction appeal, cannot rely on any argument that his counsel's ineffectiveness caused him to miss the deadline for filing an amended brief with the Ohio Court of Appeals or for timely appealing the September 29, 2009 dismissal order to the Ohio Supreme Court. Therefore, he has not demonstrated cause for his procedural default of any claims raised in or arising from the state post-conviction proceedings.

Accordingly, in sum, petitioner has procedurally defaulted his claims for relief. Because

petitioner has not demonstrated "cause" for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, the undersigned concludes that petitioner has waived all grounds for federal habeas relief that are asserted in the instant petition. The petition, which is thus barred from review by this Court, is subject to dismissal with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's motion for a stay of the instant action (Doc. 25) be **DENIED**.

2. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

3. Petitioner's motion for leave to proceed *in forma pauperis* (Doc. 26) be **DENIED** as moot.

4. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[11]

5. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should

---

[11] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

**DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See*

Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  11/17/2011                       s/Karen L. Litkovitz
            cbc                                              Karen L. Litkovitz
                                                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER L. SMITH,                           Case No.. 1:10-cv-780
        Petitioner

      vs                                     Spiegel, J.
                                           Litkovitz, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
        Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent ☐ Addressee

B. Received by ( *Printed Name* )    C. Date of Delivery

1. Article Addressed to:

Christopher L. Smith 536983
Lebanon Corr. Inst.
PO Box 56
Lebanon, OH 45036

D. Is delivery address different from item 1? ☐ Yes
    If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*    ☐ Yes

2. Article Number
*(Transfer from service label)*

7003 2260 0002 6723 4361

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

1: 10 cv 780   Doc. 28